UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**OLGA M. RODRIGUES,**                              Chapter 7
    Debtor                              Case No. 09-11960-JNF

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

MEMORANDUM

I. INTRODUCTION

The matter before the Court is the Objection of Chapter 7 Trustee to Debtor's Claim of Homestead Exemption in Real Estate. The Debtor, Olga M. Rodrigues (the "Debtor"), filed an Opposition to the Trustee's Objection. The Court heard the matter on January 14, 2010.

The material facts necessary to resolve the parties' dispute are not contested.[1] The issues presented include whether the Debtor effectively revoked a trust in recording a homestead, and whether the Debtor has a valid homestead exemption in view of the deed transferring the property to a trust which she can both amend and revoke. The Court now

---

[1] *See* Federal Rule of Bankruptcy Procedure 9014, which makes Rule 7056 (and, therefore, Fed. R. Civ. P. 56(c)) applicable to contested matters.

makes the following findings of fact and rulings of law in accordance with Fed. R. Bankr. P. 7052.

**II. FACTS**

The Debtor filed a voluntary Chapter 7 petition on March 11, 2009. On Schedule A-Real Property,[2] she listed ownership, in fee simple, of property located at 15 Joshua Weeks Lane, South Dartmouth, Massachusetts (the "property") with a value of $250,000, subject to a lien in the amount of $116,000.[3] On Schedule C-Property Claimed as Exempt, the Debtor claimed the property as exempt pursuant to Mass. Gen. Laws ch. 188, § 1.

On or about September 19, 1979, the Debtor and her now deceased husband, Emanuel B. Rodrigues, purchased the property. When he died on November 16, 1994, the Debtor became the sole owner of the property.

The Debtor transferred the property by quitclaim deed to the Olga M. Rodrigues Living Trust (the "Trust") for a stated consideration of $1 on August 5, 2003, the same day she created the Trust whose beneficiaries are her children. The Trust is an 82-page document with estate planning, tax and other complex provisions related to the Debtor's

---

[2] Debtor's counsel admitted at the hearing that he did not learn that title to the property was in the Olga M. Rodrigues Living Trust until contacted by the mortgagee. Had counsel conducted a title search before the commencement of the Chapter 7 case, the Debtor and the Chapter 7 Trustee easily could have avoided the legal fees associated with this contested matter.

[3] In her response to the Trustee's Objection, the Debtor indicated that the most recent broker's opinion of the value of the property was $237,000 and that the amount of claims secured by the property was $130,000, leaving equity of approximately $107,000. On Schedule F-Creditors Holding Unsecured Nonpriority Claims, the Debtor listed $61,286.40 in mostly credit card debt.

potential incapacity, including Section 6, captioned "Government Assistance and Medicaid Planning." The Trust contains the following pertinent provisions:

> My Trust Agreement, dated Aug - 5 2003 [sic] is made between OLGA M. RODRIGUES, the Trustor, and the following Initial Trustee: OLGA M. RODRIGUES.
>
> My Trust is a revocable trust. My Trust is a grantor trust under the provisions of Sections 673-677 of the Code. . . . [Article One, Section 3].
>
> Unless otherwise provided in my Trust Agreement, when I am serving as Trustee under my Trust, I may conduct business and act on behalf of my Trust without the consent of any other Trustee. [Article One, Section 4].
>
> ***
>
> While I am alive and competent, I may add a Trustee, or remove or replace any other Trustee appointed under my Trust Agreement at any time without cause. [Article 3, Section 3.a]
>
> ***
>
> While I am alive, I may at any time or times amend any provision of my Trust Agreement or revoke my Trust in whole or in part. [Article 4, Section 3.a]
>
> Any amendment or revocation of my Trust Agreement made during my life shall be by a written instrument signed by me and delivered to my Trustee. [Article 4, Section 3.b]
>
> Any exercise of a power of amendment substantially affecting the duties, rights and liabilities of my Trustee shall be effective upon my Trustee only if agreed to by my Trustee in writing. [Article 4, Section 3.c]
>
> After any revocation with respect to my Trust, my Trustee shall promptly deliver the trust property to me. [Article 4, Section 3.d]

Additionally, on August 5, 2003, the Debtor executed a Declaration of Homestead in her capacity as Trustee of the Olga M. Rodrigues Living Trust.

3

On July 6, 2004, in conjunction with the execution of a note and mortgage in favor of Citizens Bank encumbering the property, the Debtor, as trustee of the Trust, executed a Trustee's Certificate, attesting that the Trust was in "full force and effect, having not been revoked as of the date hereof nor amended, altered or modified," and that she was the sole trustee of the Trust.

On April 2, 2008, less than one year before the commencement of her Chapter 7 case, the Debtor, individually, executed a Declaration of Homestead pursuant to Mass. Gen. Laws ch. 188, § 1 with respect to the property. The Declaration of Homestead was properly recorded in the Bristol County Registry of Deeds. It provides in pertinent part the following:

> Know all men by these presents that I, Olga Rodrigues . . . as a householder and having a family being entitled to an Estate of Homestead in the land and buildings thereon am filing for protection under Massachusetts Laws, Chapter 188, [sic] and I do hereby declare that I own and am possessed and occupy said hereinafter described premises as a residence and homestead under Massachusetts General Law, Chapter 188 [sic] as amended. . . .[4]

There is no dispute that the Debtor has lived in the property since at least 1979 and that she is an elderly widow whose primary source of income is Social Security.

At the present time, title to the property remains in the Trust. Although the Debtor erroneously listed the property on Schedule A, the Chapter 7 Trustee has not commenced

---

[4] The Declaration of Homestead did not reference a subsection of Mass. Gen. Laws ch. 188. Section 1 provides: "An estate of homestead to the extent of $500,000 in the land and buildings may be acquired pursuant to this chapter by an owner or owners of a home or one or all who rightfully possess the premise by lease or otherwise and who occupy or intend to occupy said home as a principal residence." Mass. Gen. Laws ch. 188, § 1.

4

an adversary proceeding seeking a determination that property is property of the estate because the Debtor, as Trustor, exercised sufficient control over the Trust property that, when coupled with her power to alter, amend and revoke, the property should be included in the Debtor's estate as real property.[5]

### III. POSITIONS OF THE PARTIES

   A. <u>The Trustee</u>

The Trustee, citing <u>In re Bowers</u>, 222 B.R. 191, 193 (Bankr. D. Mass. 1998), and <u>Assistant Recorder of the North Registry District of Bristol Co. v. Spinelli</u>, 38 Mass. App. Ct. 655 (1995), argues that the Debtor is unable to claim a Massachusetts homestead exemption on real estate held in trust, "unless the trust is in name only and is collapsible, thus vesting legal and equitable title in one person." The Trustee acknowledges that if a debtor conveys real property to a trust while reserving a life estate, he or she may claim a Massachusetts homestead with respect to the life interest, *see* <u>In re Zmijewski</u>, 390 B.R. 24 (Bankr. D. Mass. 2008). He also acknowledges that the trustee of a nominee trust may be eligible for the Massachusetts homestead exemption as "owner," or if the doctrine of merger applies, *see* <u>In re Szwyd</u>, 370 B.R. 882 (B.A.P. 1st Cir. 2007)(debtor sole trustee and beneficiary of nominee trust); *see also* <u>In re Aroesty</u>, 385 B.R. 1, 5 (B.A.P. 1st Cir.

---

[5] The Debtor is not a beneficiary of the Trust. For bankruptcy purposes, her interest in the Trust properly should have been included on Schedule B-Personal Property. *See* 11 U.S.C. § 541(d) ("Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest . . . become property of the estate under subsection (a)(1) or (2) of this section only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.").

5

2008)(statutory cap applied to property transferred to debtor from trust within 1,215 days of the petition date), In re Khan, 375 B.R. 5, 9 (B.A.P. 1st Cir. 2007) ("[I]n a nominee trust, the legal title of the trustee and the equitable title of the beneficiary merge when the same person hold [sic] both titles."). In the absence of a life estate or the merger of the legal and equitable interests, however, the Trustee maintains that the decision in Zmijewski, where the debtor's interest was not an interest in real estate but an interest in personalty, controls the outcome of the instant dispute because the Trust at issue is a true trust.

    B. The Debtor

The Debtor maintains that she revoked the Trust when she filed the Declaration of Homestead, "at least in part, as it has to do with the real property pursuant to its terms" adding that "[t]he real property automatically reverted back to the debtor's possession and ownership and therefore the homestead exemption applies . . . ." The Debtor maintains that the 2008 Declaration of Homestead satisfies the provision of Article 4, Section 3.b of the Trust which provides that the Trustee may revoke the Trust Agreement by "a written instrument signed by me and delivered to my Trustee." The Debtor adds that it was her intent by filing the Declaration of Homestead "to revoke the Trust, at a minimum as it relates to the real property." She states:

> [T]he Debtor was not seeking protection of a homestead for the Trust but rather the revocation of the Trust and a homestead for herself. Her intentions were, by her actions, to revoke the Trust in whole or at least in part as it pertained to the real property by declaring in writing that she, as of April 2, 2008 owned the real property.

The Debtor admitted that she intended to have an attorney prepare a deed from the Trust

to herself when her finances permitted such employment.

## IV. DISCUSSION

Based upon the undisputed facts, the Court finds that the Debtor's argument that the Trust was revoked lacks merit. Although the Debtor may have intended to revoke the Trust, the Declaration of Homestead dated August 5, 2008 makes no specific reference to the Trust Agreement. Revocation of the Trust and a deed from the Trust to the Debtor would have had to precede the Declaration of Homestead for the Debtor to declare the homestead as the *owner* of the property. While the Debtor may have occupied the property at the time she executed the Declaration of Homestead, she did not hold legal title to the property. In the absence of a writing in which the Debtor expressly stated that she was revoking the Trust, and in the absence of a deed from the Trust back to the Debtor, the Court concludes that the Trust was not revoked and that the Debtor was not *the legal owner* of the property for purposes of claiming a homestead under Mass. Gen. Laws ch. 188, § 1.

According to the Court in Bongaards v. Millen, 440 Mass. 10 (2003), "'[t]he law of Massachusetts is plain that a valid trust, once created, cannot be revoked or altered except by the exercise of a reserved power to do so, which must be exercised in strict conformity to its terms.'" Id. at 15 (quoting Phelps v. State St. Trust Co., 330 Mass. 511, 512, 115 N.E.2d 382 (1953)). While the Trust Agreement does not expressly set forth what form the "written instrument" of revocation must take, the Court concludes, based upon the numerous and detailed provisions of the 82-page Trust Agreement, that revocation of the Trust was to have been expressly stated in a writing and that revocation by implication was not

7

contemplated by the Debtor as Testator at the time of the execution of the Trust Agreement. Thus, the Court determines that the April 2, 2008 Declaration of Homestead, in and of itself, was ineffective to revoke the Trust.

Having concluded that the Trust was not revoked, the next issue is whether the property held in Trust is property of the Debtor's bankruptcy estate. The Debtor erroneously indicated on Schedule A that she owned the property in fee simple. Moreover, as noted above, the Trustee has not filed an adversary proceeding for a determination that the Debtor holds the equitable interest in the Trust property, as opposed to legal title to the property in her capacity as trustee of the Olga M. Rodrigues Living Trust as reflected in the recorded deed from the Debtor to herself as trustee of the Olga M. Rodrigues Living Trust.

Both the Trustee and the Debtor assume in one fashion or another that the property is property of the estate. *See* 11 U.S.C. § 541(a). From the point of view of the Debtor, because the property is property of the estate, she can claim it as exempt. From the point of view of the Trustee, the Debtor does not own real property and cannot claim it as exempt, but clearly the Debtor has an interest in the property which he can liquidate for the benefit of creditors. In other words, the Chapter 7 Trustee confronts a timing challenge. If he were to file an adversary proceeding before obtaining a determination that the Debtor does not have a valid homestead, relying on cases from this Court, such as In re Tougas, 339 B.R. 164 (Bankr. D. Mass. 2006) (because debtor, as co-settlor and sole trustee of the trust, retained broad power to alter and amend the trust and retained the incidents of ownership of the trust res, the trust and trust res were property of debtor's bankruptcy

estate); and In re Beatrice, 277 B.R. 439 (Bankr. D. Mass. 2002)(same), and if he obtained a determination that the property is property of the estate, he would, in effect, undermine his objection to the Debtor's homestead. This is particularly so where, as here, there is no evidence that the Debtor is intending to manipulate the bankruptcy process to the detriment of her creditors.

The Court need not make a determination that the property - - the Trust res - - is property of the estate, however. Were the Trustee or even the Debtor to seek such a determination, the likely outcome would be controlled by the decisions in Tougas and Beatrice, and this Court would likely find that property located at 15 Joshua Weeks Lane, is property of the estate as the Debtor retained broad powers to amend and revoke the Trust and she exercised incidents of ownership.

Nevertheless. the decisions in In re Zmijewski, 390 B.R. 24 (Bankr. D. Mass. 2008), and Assistant Recorder of the North Registry District of Bristol County v. Spinelli, 38 Mass. App. Ct. 655 (1995) (The statute makes no provision for property held in trust for the benefit of a settlor who makes the property his or her principal reisdence."), cannot be ignored. In Zmijewski, the court stated:

> [T]he Trust interest is not an interest in real estate. She [the debtor] holds an interest in the Trust and such interest is personal property, not real estate. In re Bowers, 222 B.R. 191, 193 (Bankr. D. Mass.1998). *See also* Markham v. Fay, 74 F.3d 1347, 1361 (1st Cir.1996)("Where, as here, a trust contains both real and personal property, and the trust instrument directs that the trust assets be liquidated upon termination of the trust, the beneficiaries' interests are personal property from the trust's inception. *See* Priestley v. Burrill, 230 Mass. 452, 120 N.E. 100, 104-05 (1918); Dana v. Treasurer and Receiver General, 227 Mass. 562, 116 N.E. 941, 943-44 (1917)."). As the court noted in Bowers, the Debtor does not live in the trust, she lives in the res of the Trust.

9

390 B.R. at 25.

With respect to the Spinelli decision, the United States Bankruptcy Appellate Panel for the First Circuit in In re Khan, analyzed it in depth. It stated:

> The Spinelli court relied primarily on a prior decision of the Massachusetts Supreme Judicial Court (the "SJC") denying a real estate tax exemption to an equitable owner of a residence under strict construction of the word "owner" in a tax exemption statute. Id. at 413 (citing Kirby v. Assessors of Medford, 350 Mass. 386, 215 N.E.2d 99 (1966)). The Spinelli court also relied in part on an earlier decision of the SJC regarding equitable title and the homestead exemption. Id. at 413 (citing Thurston v. Maddocks, 88 Mass. (6 Allen) 427, 428 (1863)). In Thurston, the SJC held that the equitable title created under a bond for a deed is not sufficient to create a right to claim a homestead exemption under Massachusetts law. However, the Panel finds the Trustee's reliance on the Spinelli decision problematic.
>
> First, Spinelli is not controlling authority in Massachusetts because it was decided by an intermediate appellate court. Szwyd, 370 B.R. at 889, n. 10. Second, the SJC has specifically overruled the strict construction standard applied to the homestead statute by the Spinelli court. Dwyer v. Cempellin, 424 Mass. 26, 673 N.E.2d 863, 867 (1996). In Dwyer, the SJC decided questions certified to it by the federal district court involving the proper construction of the Massachusetts homestead statute. The SJC concluded that "in light of the public policy and the purpose of the statute, the State homestead exemption should be construed liberally in favor of debtors." Id. In Dwyer, the chapter 7 trustee had objected to a declaration of homestead because it was a joint declaration of homestead when the statute at the time of the declaration provided that only one owner could acquire a homestead interest. Id. at 27, 673 N.E.2d 863. The SJC held that the second signature on the declaration of homestead did not invalidate the first signature and found that the first signatory to the declaration had a valid homestead interest. Id. at 31, 673 N.E.2d 863.
>
> The SJC has since reaffirmed its view that the public policy behind the homestead exemption requires that it be construed liberally in favor of debtors. Shamban v. Masidlover, 429 Mass. 50, 705 N.E.2d 1136 (1999). In Shamban, the SJC dealt with another certified question from the federal district court arising from an objection to a claim of homestead exemption by a chapter 7 trustee. Ten years before the filing of her bankruptcy petition, the debtor had filed a declaration claiming a $200,000.00 homestead exemption

(twice the amount generally available at the time) on account of a disability. Mass. Gen. Laws ch. 188, § 1A (2007). The chapter 7 trustee's objection was based upon the failure of the debtor to include with her declaration of homestead the proper documentary proof of her disability as required by the explicit provisions of the statute. Shamban, 705 N.E.2d. at 1139. The SJC held that although the debtor's declaration of the homestead exemption available to disabled individuals was invalid because her declaration did not comply with the statute, Id. at 53, 705 N.E.2d 1136, her declaration was valid under the statute pertaining to the regular homestead exemption, it was effective to establish a homestead exemption in the regular amount. Id. at 54, 705 N.E.2d 1136.

Finally, even if Spinelli is authority for the Trustee's position that a person holding an equitable interest in a nominee trust which holds legal title to that person's principal residence may not file a valid homestead declaration under Massachusetts law, the decision itself has been called into question. *The decision in Spinelli was based upon that court's determination that the word "owner" did not include the holder of an equitable as opposed to a legal interest in a principal residence.* However, the Massachusetts homestead statute provides that a homestead interest "may be acquired . . . by an owner or owners of a home *or one or all who rightfully possess the premise by lease or otherwise."* Mass. Gen. Laws ch. 188, § 1 (2007). *The precise identity of the persons other than the "owner" who may acquire a homestead interest is not clear in either the statute or the decided cases*. In Szwyd, Judge Boroff pointed out that Spinelli "only tangentially touched on the 'or one or all who rightfully possess by lease or otherwise' language" in the homestead statute and that the court simply quoted the language in Thurston which stated that such language applied to leased land. Szwyd, 346 B.R. at 292. Therefore, the Spinelli court did not construe the homestead statute liberally in favor of the debtor, the Thurston decision did not deal with an equitable interest under a nominee trust and no case establishes whether a person other than an owner may acquire a homestead interest. It may be that the holding in Spinelli goes too far in its restrictive interpretation of the words "or one or all who rightfully possess by lease or otherwise;" however, Judge Boroff's view was that "such an inquiry should be certified to the state's highest court for resolution." Id. at 293. The Panel agrees with Judge Boroff. However, this case can be disposed of without the need for a certified question.

In re Khan, 375 B.R. at 11-13(emphasis supplied).

Although the Debtor, as Trustee of the Olga M. Rodrigues Living Trust, was not

11

technically the legal owner of the property, in executing the Declaration of Homestead, she stated: "I own and *am possessed and occupy*" the property. Based upon the decision in Khan, and, more importantly, the plain language of Mass. Gen. Laws ch. 188, § 1, the statute provides that a person other than an owner may claim an estate of homestead. The statute provides that "one or all who rightfully possess the premise by lease or otherwise," may acquire the estate of homestead. Thus, a lessee may claim an estate of homestead. But what does possession "*or otherwise*" mean? There are no cases interpreting this precise language, but Khan points the way.

Based upon the undisputed evidence in this case, the Court concludes that the Debtor, in her capacity as Trustee, granted herself rightful possession of the property and intended to occupy it as her principal residence. She did not need to execute a lease with herself to authorize rightful possession. Although the Debtor may not have successfully revoked the Trust, the record contains evidence in the form of the Declaration of Homestead and Schedule A that she viewed the property as her home and intended to occupy it as such. In view of the decisions of the Supreme Judicial Court in Shamban v. Masidlover, 429 Mass. 50, 705 N.E.2d 1136 (1999), and Dwyer v. Cempellin, 424 Mass. 26, 673 N.E.2d 863, 867 (1996), this Court finds and predicts that the Supreme Judicial Court also would find that the Debtor rightfully possessed the property through a grant of occupancy to herself and validly claimed a homestead under Mass. Gen. Laws ch. 188, § 1.

The Trustee's Objection is predicated upon an invalid homestead. The Court finds

that the Debtor has a valid homestead under Massachusetts law. The question left unanswered is whether the real property is property of the estate. Whether it is, or is not, and whether the Debtor can claim the property as exempt from property of the estate under 11 U.S.C. § 522(b), is not determinative. Even were the parties to obtain a determination that the property is property of the estate, because this Court has determined that the Debtor has a valid homestead she could claim the property as exempt. In other words, even were the Trustee to file and adversary proceeding and obtain a determination as to the status of the property as property of the estate, and proceeds from a sale of the property after satisfaction of valid liens and encumbrances would inure to the benefit of the Debtor, not the unsecured creditors.

## V. CONCLUSION

For the reasons set forth above, the Court shall enter an order overruling the Trustee's Objection.

By the Court,

Joan N. Feeney
United States Bankruptcy Judge

Dated: February 23, 2010
cc: Andrew Barrett, Esq., Arvid Von Taube, Esq., Warren Agin, Esq.